CLERK'S OFFICE U.S. DIST COURT
AT ABINGDON, VA
FILED

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

APR 23 2014
JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 1:14-MJ-113
A Black Samsung Galaxy S-IV, belonging to Bill Hunt )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the _____Western_____ District of _____Virginia_____, there is now concealed *(identify the person or describe the property to be seized)*:

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 USC 841 & 846 | Distribution of methamphetamine and Conspiracy to Distribute methamphatmine |

The application is based on these facts:

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

ATF SA Jon Tabor
Printed name and title

Sworn to before me and signed in my presence.

Date: 4/23/14

_____
Judge's signature

City and state: _____

Pamela Meade Sargent
USMJ
Printed name and title

## APPLICATION AND AFFIDAVIT

The affiant, Jonathan Tabor, having been duly sworn, deposes and states as follows:

1. Upon information and belief, the below listed property is presently being used in the furtherance of the distribution of quantities of Methamphetamine, a controlled substance, in violation of 21 U.S.C. § 846.

   - One black Samsung Galaxy S4 cell phone with unknown serial number. Cell phone is currently stored in ATF Evidence as exhibit #246.

2. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been employed since 2009. Prior to becoming an ATF Agent I served as a State Trooper with the West Virginia State Police from 2003-2009. I have received training at the West Virginia State Police Academy, Federal Law Enforcement Training Center (FLETC), and the ATF National Academy in various investigative techniques to include preparation of search warrants. As a State Trooper and Special Agent I have participated in numerous investigations involving the seizure of various controlled substances, the seizure of narcotics related records and other types of evidence that document a criminal organization's activities in both the manufacturing and distribution of controlled substances and have utilized a variety of investigative techniques and resources, including physical and electronic surveillance, confidential informants and cooperating sources.

3. Based on my training and experience I have become familiar with methods used by traffickers to smuggle and safeguard narcotics, to distribute narcotics, and to collect and launder proceeds. The affiant is aware of the sophisticated tactics they routinely use to attempt to thwart detection by law enforcement which include the utilization of numerous

different cellular telephones, counter surveillance, elaborately planned distribution schemes, false or fictitious identities, and coded communications and conversations.

4. The information contained in this affidavit is based solely on my personal knowledge and information provided to me by other law enforcement officers and individuals. The information in this affidavit is provided for the limited purpose of establishing probable cause. The information is not a complete statement of all the facts related to this case.

5. According to the records of Sprint, telephone number (276) 492-8874 had no subscriber information. According to the records of Thomas Reuters (credit database), telephone number (276) 492-8874 was assigned to William H. HUNT. As a result of this investigation, agents believe that the primary user of this telephone was William Hammond HUNT, Jr. aka Bill HUNT.

6. On March 22, 2013, a search warrant was applied for and obtained in the Western District of Virginia for text messages stored in the accounts of several cellular telephones, including that utilized by Timothy GERACE a known methamphetamine distributor in Mountain City, TN. In response to the execution of this search warrant on Verizon Wireless, agents received text messages stored in those accounts from February 24 to March 21, 2013. The following is an excerpt from the search warrant results.

**March 19 – 20, 2013**

Nathan HALL to Tim GERACE, *"Hey this is Nate need to see you its been a long week with no work give me a call asap. Thnx\N$nate$"*
HALL to GERACE, *"Can I come see you? Nate"*
HALL to GERACE, *"Can I come on up? Just got straight. Thanks. Mate"*
HALL to GERACE, *"I got that cash I owe you mate"*
HALL to GERACE, *"Do you want me to stay at store?"*
GERACE to HALL, *"Yes"*
HALL to GERACE, *"I'll be up what time you think you b here my dada up. Red gate. Thnx"*

HALL to GERACE, "*Sorry about me asking what time my uncle just let me no your coming. Thaw. \NMate*"
HALL to GERACE, "*Are you gonna make it? My uncle has cleaned house please try. Thanks \Nate*"
HALL to GERACE, "*Did I miss your somehow someone turned at gate? Sorry if I did.*"

Brady LESTER to GERACE, "*Ant bothering u no more, but b4 I make journey to da shity I ant gonna b on dry run, am i?? and God Damn Nate agrevating me wants 2 no if u got Bill??*"
GERACE to LESTER, "*No not yet*"
LESTER to GERACE, "*Yea, screw Bill...what bout me*"
LESTER to GERACE, "*On my way now. B there n 30 min*"

Based on my training and experience, and my knowledge of this investigation, I believe that Nathan HALL utilized the text messaging service on his cellular telephone to order methamphetamine from Tim GERACE. I believe that HALL and GERACE arranged to meet at the residence of Bill HUNT.

7. On April 10, 2013, a search warrant was applied for and obtained in the Western District of Virginia for text messages stored in the accounts of several cellular telephones, including those utilized by Timothy GERACE and Brady LESTER. In response to the execution of these search warrants on Verizon Wireless, agents received text messages stored in those accounts dating from March 23 to April 10, 2013. The following are excerpts from the search warrant results.

**March 23, 2013**

Nathan HALL to Brady LESTER, "*Tim is on his way have you talked to hik?*"
LESTER to Timothy GERACE, "*Bring me a half*"
HALL to LESTER, "*U need 2 hook up wit me and make something happen*"
LESTER to HUNT, "*Tim at Nates?*"
HALL to LESTER, "*What's up tryin to sell some shit at the office*"
LESTER to HALL, "*I'm outa dope, banks close soon, ot no ride. Ima going to bed*"
HUNT to LESTER, "*U in Abingdon 2nite*"
LESTER to HUNT, "*Sup buddy...just awoke from a monthly mandatory 3 hour comatose...sup w yal...sure like to get up w/ Nate I would really love to play my new ph toy...*"

Based on my training and experience, and my knowledge of this investigation, I believe that Nathan HALL utilized the text messaging service on his cellular telephone to communicate with Brady LESTER about selling methamphetamine.

**March 24, 2013**

Brady LESTER to Timothy GERACE, "*Dickhead whers u at...I'm on my way to lake*"
LESTER to GERACE, "*Call me asap...need to get n my stuff im at condo*"
HUNT to LESTER, "*Tell Nathan 2 drive u on cart 2 lower garage @ basketball goal...text me wen u start on cart*"
LESTER to HUNT, "*B up there n 5*"
LESTER to HUNT, "*On my way now*"
LESTER to GERACE, "*Whats up round boy...fucking tell tweeky u gota go c ur son and come the fuck on*"
LESTER to HUNT, "*I needa 4\*4\*4 in pyrex cook dish or something close*"
LESTER to HUNT, "*R u back...I need that dish*"
LESTER to HUNT, "*Bill call Nate and tell him ti get up there...im in a hurry*"

Based on my training and experience, and my knowledge of this investigation, I believe that Brady LESTER utilized the text messaging service on his cellular telephone to communicate with Tim GERACE and Bill HUNT regarding the manufacturing of methamphetamine at the residence of HUNT.

**March 26, 2013**

Brady LESTER to Timothy GERACE, "*Fuck face...crawl off it. I need a half I'm at the Bristol Hospital, so just drop it off w Nate*"
GERACE to LESTER, "*Were the fu is Nate*"
LESTER to GERACE, "*Asleep where r I need a g.*"
GERACE to Nathan HALL, "*Call me A.S.A.P.*"
GERACE to LESTER, "*Call me*"
HALL to GERACE, "*Just talked to Bill he can't get out to go to ATM till 9am can I see you then? He did other things with my cash.*"
GERACE to HALL, "*Yes 900*"
HALL to GERACE, "*K*"

Based on my training and experience, and my knowledge of this investigation, I believe that Brady LESTER utilized the text messaging service on his cellular telephone to order

methamphetamine from Tim GERACE. I believe that GERACE arranged to drop off the

methamphetamine with Nathan HALL, to be purchased by Bill HUNT.

**March 27, 2013**

Nathan HALL to Timothy GERACE, *"Big guy! Bill had the you a t noon I didn't hear the door. I'm not trying to bs u I got u. R u coming this way? I can come 2 u if not."*
Brady LESTER to GERACE, *"Stop worrying bout pussy its what got u in shape u n now god damn it we well takw care of that pigndue time. Nate needs to cu and so do I. I need g have cabbage"*
LESTER to GERACE, *"Nate its soon gona wana meet u, he has a ride better call him"*
HALL to GERACE, *"Can you come over? Brady told me you have been busy so I've waited hours to text. Thnx."*
LESTER to GERACE, *"I got access to 450 maybe more u want that pig get him cut off. Call me damn it"*

Based on my training and experience, and my knowledge of this investigation, I believe that

Brady LESTER utilized the text messaging service on his cellular telephone to initially order

a gram of methamphetamine ("g") from Tim GERACE. I believe that LESTER and Nathan

HALL requested GERACE to deliver the methamphetamine, and LESTER came up with an

additional $450.00 to purchase methamphetamine.

**March 30, 2013**

Timothy GERACE to Nathan HALL, *"Will you have all for pizza"*
HALL to GERACE, *"1 from yesterday, Bill"*
GERACE to HALL, *"120"*
HALL to GERACE, *"Sorry. Bill is buying half pizza today. I buy you half back tomorrow for the 1 yesterday"*
GERACE to HALL, *"Ok"*

Based on my training and experience, and my knowledge of this investigation, I believe that

Nathan HALL utilized the text messaging service on his cellular telephone to notify Tim

GERACE that HALL only had $100.00 ("Bill") to pay for yesterday's methamphetamine

("pizza"). I believe that HALL arranged for Bill HUNT to purchase ½ gram of

methamphetamine and promised that GERACE would get paid tomorrow. Your affiant

knows that one (1) gram of crystal methamphetamine purchased in Southwest Virginia has a going rate of $120.00, which is what GERACE expected to be paid by HALL.

**March 31, 2013**

Nathan HALL to Timothy GERACE, *"Can you come over? Bill and I need to see you! Got you from yesterday and some 2day?"*
GERACE to HALL, *"Ok let me wake up"*
HALL to GERACE, *"Thnx!"*

HALL to Brady LESTER, *"What did Tim say? Need to no how 2 get Bill out to late sis is on his ass."*
LESTER to HALL, *"Ain't talked to him"*
HALL to LESTER, *"Text him let him no I'll take care of you."*

LESTER to GERACE, *"Dude bring me a g I got cabbage"*
LESTER to GERACE, *"Dude go c Nate, so him and Bill can take care of me I'm fucking sick can u come c me?"*

HALL to GERACE, *"Like to c u b4 Bill wastes more $ He's killing me."*
HALL to GERACE, *"Bill is trying to leave gate open. Is it gonna be awhile?"*
GERACE to HALL, *"On my way"*
GERACE to HALL, *"Close gate"*

Based on my training and experience, and my knowledge of this investigation, I believe that Nathan HALL utilized the text messaging service on his cellular telephone to order methamphetamine from Tim GERACE and assure him that he would get paid for yesterday's and today's. I believe that HALL told LESTER that HUNT would pay for their methamphetamine. I believe that HALL arranged with GERACE for the methamphetamine to be delivered to HUNT's residence.

8. On June 20, 2013, CS-7 was interviewed in Abingdon, VA. CS-7 stated that several weeks prior, they had been with Nathan HALL at HALL's apartment when HALL and a white male named "Tim" attempted to manufacture methamphetamine. CS-7 rode with "Tim" to purchase matches and iodine while HALL and his mother purchased Sudafed and

"Heet". CS-7 stated that all these materials were purchased for the ultimate goal of manufacturing methamphetamine. While HALL and "Tim" were attempting to manufacture methamphetamine, Bill HUNT came into the apartment and asked HALL if 'it' was going to work, referring to the methamphetamine cook. HALL had some finished product in the apartment, and while the "cook" was ongoing, HUNT smoked methamphetamine while HALL and "Tim" snorted it.

9. On August 16, 2013, a search warrant was executed at 19012 Lake Rd., Abingdon, VA, the residence of Nathan HALL, Brandi DUNFORD, Bill HUNT and others. Seized from the apartment of HALL and DUNFORD was a methamphetamine lab.
Subsequent to the search warrant, HALL, DUNFORD and HUNT were interviewed separately. HALL stated that the liquids seized during the search warrant did not contain methamphetamine, as they were left over from previous "cooks". HALL stated that he obtained his methamphetamine primarily from "BUDDHA" aka Tim GERACE. HALL stated that HUNT allowed HALL to stay at his residence in an effort to keep HALL "clean". HALL stated that HUNT was a drug addict himself, having been addicted to crack cocaine in the past. HALL stated that HUNT might currently be under the influence of "speed". HUNT stated that he knew nothing about drugs other than what he read in the newspapers. HUNT stated that he had been in HALL's apartment "a few hours ago" and had seen no evidence of methamphetamine manufacturing. HUNT was aware that HALL had been with Angelic Counts and Brandi DUNFORD when they were both arrested on methamphetamine related charges, but did not think that HALL was involved with methamphetamine. (During the interview with HUNT it was the opinion of agents/officers involved that HUNT was under the influence of a stimulant and was not being truthful about his knowledge of the

manufacturing of methamphetamine on his property.) Also seized pursuant to the search warrant was the cellular telephone belonging to Nathan HALL. Contained within the phone were the following text messages with telephone number (276) 492-8874 (saved under the name "Bill" and known by law enforcement to be utilized by HUNT):

William HUNT, Jr. to Nathan HALL, "*Wat is the story*"
HALL to HUNT, "*Still waiting on call..*"
HUNT to HALL, "*K*"
HUNT to HALL, "*Any news*"
HALL to HUNT, "*She tryin to get ridw*"
HALL to HUNT, "*Can I get some cash?*"
HALL to HUNT, "*I'm out of cigs an Ice Cream..*"
HALL to HUNT, "*3 bills*"
HALL to HUNT, "*My dude is close*"

Based on my training and experience, and my knowledge of this investigation, I believe that Bill HUNT utilized the text messaging service on his cellular telephone to communicate with Nathan HALL about the availability of methamphetamine ("*Ice Cream*"). I believe that HALL ordered the methamphetamine to be delivered and told HUNT that it would cost him $300.00 ("*3 bills*").

10. The following text messages were contained within HALL's cellular telephone under telephone number (276) 782-2929, known by your affiant as the telephone number utilized by Brady LESTER:

Brady LESTER to Nathan HALL, "*Bill gona pay for hotel? Gotta b at Shawna n 2'5 hrs*"
HALL to LESTER, "*Yes you may need to hold him off an hour...*"

HALL to LESTER, "*Just got off the phone with Bill. He don't want anyone over tonight. I think he's scared we won't be able to make that run...he will be here n 10 to take me to Bristol*"

HALL to LESTER, "*Sis won't let anyone stay! You can come run 1. It will be hard to keep it from her. Bill stays down here..wwhat do you think? We can fish the night away.*"

Based on my training and experience, and my knowledge of this investigation, I believe that Nathan HALL utilized the text messaging service on his cellular telephone to communicate with Brady LESTER about HUNT's involvement in the manufacturing of methamphetamine. I believe that HUNT financed motel rooms in which methamphetamine was made by HALL and LESTER. I believe that HUNT allowed HALL and LESTER to manufacture methamphetamine on HUNT's property which is located on South Lake Holston in Abingdon, VA. I know that "Sis" is the nickname of HUNT's wife.

11. On August 23, 2013, DEA SA Brewer received a telephone call from Bill HUNT. HUNT told SA Brewer that he was being extorted and was told to send $5,000.00 via Western Union to an unknown person, or else this person would divulge information to law enforcement about the manufacturing of methamphetamine on HUNT's property. HUNT provided telephone number (276) 492-8874 as his contact number.

12. On October 21, 2013, Bristol, VA Police Department Officer Bobby Nichols responded to La Quinta Inn in Bristol, VA. The employee filed a complaint for unusual odor and property damage related to a room rented by Bill HUNT. Upon arriving at the room, Ofc. Nichols observed a strong chemical odor and burn marks on the furniture, both consistent with the production of methamphetamine. In addition, Ofc. Nichols observed a white powdery substance on the dresser which he believe to be consistent with the substance contained within batteries, which he knew to be used in the production of methamphetamine.
In the presence of Ofc. Nichols, the employee contacted HUNT by telephone to notify him of the damage and possible credit card charges that would follow. HUNT told the employee that he didn't even stay in the room, that it was Nathan HALL and Brandi DUNFORD who had stayed there.

13. On Wednesday, April 16, 2014 Bill HUNT was arrested pursuant to a federal arrest warrant issued in the Western District of Virginia for alleged violations of 21 U.S.C. 846 Conspiracy to Distribute Methamphetamine. During a search incident to arrest HUNT was found to be in possession of a black Samsung Galaxy S4 cell phone. The phone is currently stored in evidence at the ATF Bristol, VA Field Office and is listed as exhibit #246.

14. Based on the affiants training and experience I know that cell phones can contain a substantial amount of information relevant to this investigation. Criminals often use cellular phones to communicate with accomplices and will sometimes store accomplices' contact information in address books, speed dial lists or in other areas of the phone. These communications can occur through typical telephone calls or through instant messaging or text messages.

15. To the extent that criminals use services such as instant messaging or text messages, these messages can sometimes be found on the cellular phone itself. Criminals also use cellular phones to document criminal activities both by photographs, videos as well as digital memos. The affiant knows that these images and memos are also stored on the handset itself. Also information can be located on the SIM (Subscriber Identity Module) which is a smart card located in the phone which also contains network information. Removable memories are also sometimes located in a cellular handset that allows the user to store vast amounts of electronic data.

16. I know that devices such as these phones can store a large number of phone numbers and call history and some mobile phones can also contain contact information and calendar information and can be linked, either by wire or wireless, with computers. Camera phones

can contain images. This information can be valuable evidence in determining and/or identifying other participants in a criminal enterprise.

17. I know that those involved in criminal enterprises sometimes use multiple phones to separate contacts with different participants or to attempt to avoid detection and monitoring by law enforcement. They also sometimes possess multiple phones to have a backup means of communication in case a phone is lost or seized by law enforcement. Likewise, the affiant knows that images in a camera can contain evidence of where a subject has been and with whom the subject has associated.

18. Based upon the facts set forth above, I believe there is probable cause that examination of the electronic data on the aforementioned cellular phones may provide evidence of the crime of 21 U.S.C. § 846, Conspiracy to Distribute Methamphetamine.

I declare under the penalty of perjury that the foregoing is true and accurate to the best of my knowledge and belief. Executed on April 21, 2014.

_____  
Jonathan A. Tabor, Special Agent, (ATF)

23 p.m s.  
4/21/2014  
Date

Subscribed and sworn to before me, this the 23 ~~21st~~ day of April 2014 in Abingdon, Virginia.

Judge Pamela Meade Sargent.

# ATTACHMENT A

## DESCRIPTION OF PLACES TO BE SEARCHED

**PROPERTY TO BE SEARCHED:**

One (1) black Samsung Galaxy S4 cell phone.

**LOCATION OF THE PROPERTY:**

Evidence Vault located at the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Bristol, Field Office (ATF Exhibit #246).

## ATTACHMENT B

## DESCRIPTION OF EVIDENCE TO BE SEARCHED FOR AND SEIZED

Any and all electronic data contained in the memory or call history of the cell phones, including any names, phone numbers, addresses, contact information, data, text, messages, images, voice memos, photographs, videos, internet access, documents or other information, contained in the cellular phones internal, external or removable memory of memories, which includes any smart cards, SIM cards or flash cards.